UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
TEODORO GARCIA and WILLIAM
MARTINEZ, on behalf of themselves
and others similarly situated,

                                      Plaintiff,

    -against-

PROGRESSIVE MAINTENANCE LLC
and PROGRESSIVE MANAGEMENT
OF N.Y. CORP. d/b/a PROGRESSIVE
MANAGEMENT, and KEN MIDDLETON
and ALLAN ARKER, individually,

                                     Defendants.
------------------------------------------------------------------------X

COMPLAINT

FLSA COLLECTIVE ACTION

CLASS ACTION

Plaintiffs Teodoro Garcia ("Garcia") and William Martinez ("Martinez") (collectively herein "Plaintiffs"), on behalf of themselves and all others similarly situated, by their attorney, Jacob Aronauer, of The Law Offices of Jacob Aronauer complaining of Progressive Maintenance LLC, Progressive Management of N.Y. Corp., and Ken Middleton and Allan Arker, individually (collectively referred to herein as "Defendants"), allege the following:

### PRELIMINARY STATEMENT

1. This is a civil action brought by Plaintiffs on behalf of themselves and all similarly situated building superintendents who worked for Defendants to recover overtime compensation owed to them pursuant to the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").

2. Plaintiffs and their similarly situated co-workers worked as building superintendents for Progressive Maintenance LLC and Progressive Management of N.Y. Corp. (collectively referred to herein as "Progressive Management").

3. Upon information and belief, Defendant Allan Arker owns Progressive Management.

4. Upon information and belief, Defendant Ken Middleton manages superintendents for Progressive Management.

5. Plaintiffs bring this action on behalf of themselves and all similarly situated current and former superintendents who elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. §§ 201 *et seq.,* and specifically, the collective action provision of 29 U.S.C. § 216(b), to remedy violations of the wage-and-hour and wage notice provisions of the FLSA that occurred at the buildings owned and controlled by Defendants.

6. Plaintiffs and the collective seek injunctive and declaratory relief against Defendants' unlawful actions, compensation for their failure to pay overtime wages, and liquidated damages, compensatory damages, pre-judgment and post-judgment interest, and attorneys' fees and costs, pursuant to the FLSA and NYLL.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action under 28 U.S.C. § 1331, 29 U.S.C. §§ 216(b)(c), and 217; and 28 U.S.C. § 1337.

8. In addition, this Court has supplemental jurisdiction over the NYLL claims under 28 U.S.C. § 1367, because they arise from a common nucleus of operative facts with the federal claims and are so related to the federal claims as to form part of the same case or controversy under Article III of the United States Constitution.

9. This Court has supplemental jurisdiction over the New York state law claims under the principles of pendent and ancillary jurisdiction.

10. Venue is proper in this district under 28 U.S.C. § 1391(b)(c) and 28 U.S.C. § 1391(b)(2), because all or a substantial part of the events or omissions giving rise to the claims occurred herein.

11. The Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. § 2201 and § 2202.

## PARTIES

**Plaintiff Teodoro Garcia**

12. Plaintiff Teodoro Garcia ("Garcia") is and was at all times relevant hereto an individual residing in Bronx County, New York.

13. Garcia worked as a building superintendent for Defendants in Bronx County, New York.

14. Garcia consistently worked over forty (40) hours per week but was not paid for any work performed after forty (40) hours.

15. At all times relevant, Garcia was a covered employee within the meaning of the FLSA and NYLL.

**Plaintiff William Martinez**

16. Plaintiff William Martinez ("Martinez") is and was at all times relevant hereto an individual residing in Bronx County, New York.

17. Martinez worked as a building superintendent for Defendants in Bronx County, New York.

18. Martinez consistently worked over forty (40) hours per week but was not paid for any work performed after forty (40) hours.

19. At all times relevant, Martinez was a covered employee within the meaning of the FLSA and NYLL.

**Defendant Progressive Maintenance LLC**

20. Defendant Progressive Maintenance LLC is a domestic limited liability company with its DOS Process address located at 1044 Northern Boulevard, 2nd Floor, Roslyn, New York, 11576.

21. At all times relevant to this action, Defendant Progressive Maintenance LLC was an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

22. Defendant Progressive Maintenance LLC has (1) employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (2) an annual gross volume of sales in excess of $500,000.00.

23. Defendant Progressive Maintenance LLC employed Plaintiff and similarly situated employees at all times relevant.

24. Defendant Ken Middleton ("Middleton") was, at all times relevant to this action, a manager for Progressive Maintenance LLC.

**Defendant Progressive Management of N.Y. Corp.**

25. Defendant Progressive Management of N.Y. Corp. is a domestic business corporation with its DOS Process address located at 1044 Northern Boulevard, 2nd Floor, Roslyn, NY 11576.

26. At all times relevant to this action, Defendant Progressive Maintenance LLC was an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

27. Defendant Progressive Management of N.Y. Corp. has (1) employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on

goods or materials that have been moved in or produced for commerce by any person; and (2) an annual gross volume of sales in excess of $500,000.00.

28. Defendant Progressive Management of N.Y. Corp. employed Plaintiffs and similarly situated employees at all times relevant.

29. Defendant Allan Arker ("Arker") is listed as the Chief Executive Officer and Principal Executive Officer of Progressive Management of N.Y. Corp. on the New York State Department of State corporation database.

30. Upon information and belief, Progressive Management of N.Y. Corp. is the parent organization of Progressive Maintenance LLC, and the two companies operate as a joint enterprise.

31. Upon information and belief, Progressive Management operates approximately 57 apartment buildings in New York City.

**Defendant Allan Arker**

32. Upon information and belief, Arker owns and maintains control, oversight and the direction of Progressive Management of N.Y. Corp.

33. Arker is a person engaged in business in Bronx County, New York County, Brooklyn County, Queens County, Richmond County, Nassau County, who is sued individually in his capacity as an owner, officer and/or agent of Progressive Management of N.Y. Corp.

34. Arker exercised sufficient control over Progressive Management of N.Y. Corp. to be considered Plaintiffs' employer under the FLSA and NYLL, and at all times material hereto said defendant had the authority to hire and fire employees and established and maintained policies regarding the pay practices at Progressive Management.

35. Arker had substantial control over Plaintiffs and similarly situated employees' working conditions and the practices alleged herein.

**Defendant Ken Middleton**

36. Middleton is a person engaged in business in Bronx County, who is sued individually in his capacity as an officer and/or agent of Progressive Maintenance LLC.

37. Upon information and belief, Middleton is and was, at all times relevant to this action a site manager for Progressive Maintenance LLC.

38. Middleton exercised sufficient control over Progressive Maintenance LLC to be considered Plaintiffs' employer under the FLSA and NYLL, and at all times material hereto said defendant had the authority to hire and fire employees and established and maintained policies regarding the pay practices at Progressive Maintenance LLC.

39. Middleton had substantial control over Plaintiffs and similarly situated employees' working conditions and the practices alleged herein.

40. Defendants employed Plaintiffs and similarly situated employees at all times relevant.

## FACTS

**Plaintiff Teodoro Garcia's Employment with Defendants**

41. Defendants employed Garcia from September 2014 through March 2019.

42. Garcia was a superintendent on behalf of Defendants at the building 3035 White Plains Rd., Bronx, NY 10458.

43. Garcia's duties included performing building repairs, cleaning, picking up garbage, shoveling snow, supervising the contractors who worked on the building, and communicating with tenants and management by email, text message and phone.

44. On March 14, 2019, Defendants terminated Plaintiff Garcia's employment.

45. Garcia was fired through a letter from Progressive Maintenance of N.Y. Corp., which stated that it was the "AUTHORIZED AGENT FOR PROGRESSIVE MAINTENANCE."

6

46. Throughout the entirety of his employment with Defendants, Garcia consistently worked more than forty (40) hours each week.

47. Throughout Garcia's employment with Defendants, even though he was not exempt, he was not paid overtime.

48. Throughout Garcia's employment, Defendants did not require him to "clock in" or "clock out" using a time tracking device.

49. Throughout Garcia's employment, when Defendants paid Garcia, they did not provide him with an accurate notation of the hours he worked.

50. Instead, Garcia's pay stubs consistently showed that he only worked a flat eight (80) hours bi-weekly.

**Plaintiff Garcia's Work Schedule, Salary and Payment at Defendants**

51. Garcia's purported work schedule was Monday through Friday from 7am to 4pm with a purported one-hour lunch break.

52. Garcia was rarely, if ever, able to take a one-hour uninterrupted lunch break despite it being automatically deducted from his pay.

53. These forty (40) hours were the only hours for which Garcia was paid.

54. Beyond these forty (40) hours per week, Garcia had to make repairs whenever something in the building needed to be fixed.

55. For example, on July 31, 2018 at 5:54 PM, Defendants requested that Garcia remove a dead mouse from a tenant's apartment.

56. This includes work Garcia was required to perform in the middle of the night and on the weekends as well.

57. Overall, Garcia was required to be available twenty-four (24) hours a day, seven (7) days a week to respond to tenants and perform maintenance work.

58. As a result, Plaintiff Garcia could not leave the City on the weekends.

59. Garcia was never paid for any of his overtime work.

60. Garcia complained to both Middleton and his previous manager, Jim, about not being paid overtime.

61. Despite Garcia's complaints, he was not compensated for his overtime work.

62. Garcia was paid an hourly rate of pay but only for the first forty (40) hours he worked.

63. Garcia's hourly rate of pay upon hire was $17.00.

64. Garcia received small raises each year, of approximately 5%.

65. Garcia's hourly rate of pay at the end of his employment was $20.40.

66. Garcia was paid by check from Progressive Maintenance LLC.

67. Garcia complained to his supervisor about not being paid for the overtime work he performed but Defendants still failed to pay Martinez for the overtime he worked.

**Plaintiff William Martinez's Employment with Defendants**

68. Defendants employed Martinez from July 2015 through January 6, 2019.

69. Martinez was a superintendent on behalf of Defendants at the building 2217 Givan Ave., Bronx, NY 10475.

70. Martinez's duties included performing building repairs, cleaning, picking up garbage, shoveling snow, supervising the contractors who worked on the building, and communicating with tenants and management by email, text message and phone.

71. Martinez was also a plumber for 8 buildings in the Bronx owned and managed by Defendants.

72. As a result, for example, if a toilet broke down on a Saturday, Martinez was expected to immediately fix it.

73. On January 6, 2019, Defendants terminated Martinez's employment.

74. Throughout the entirety of his employment with Defendants, Martinez consistently worked more than forty (40) hours each week.

75. Throughout Martinez's employment with Defendants, even though he was not exempt, he was not paid overtime.

76. Throughout Martinez's employment, Defendants did not require him to "clock in" or "clock out" using a time tracking device.

77. Throughout Martinez's employment, when Defendants paid Martinez, they did not provide him with an accurate notation of the hours he worked.

78. Instead, Martinez's pay stubs consistently incorrectly showed that he only worked a flat eighty (80) hours bi-weekly.

79. Martinez complained to his supervisor about not being paid for the overtime work he performed but Defendants still failed to pay Martinez for the overtime he worked.

**Plaintiff Martinez's Work Schedule, Salary and Payment at Defendants**

80. . Plaintiff Martinez's purported work schedule was Monday through Friday from 7am to 4pm with a purported one-hour lunch break.

81. Martinez was rarely, if ever, able to take a one-hour uninterrupted lunch break despite it being automatically deducted from his pay.

82. These forty (40) hours were the only hours for which Martinez was paid.

83. Beyond these forty (40) hours per week, Martinez had to make repairs whenever something in the building needed to be fixed.

9

84. This includes work Martinez was required to perform in the middle of the night and on the weekends as well. Overall, Martinez was required to be available twenty-four (24) hours a day, seven (7) days a week to respond to tenants and perform maintenance work.

85. As a result, Martinez could not leave the City on the weekends.

86. Martinez, though, was never paid for any of this overtime work.

87. Martinez was paid an hourly rate of pay but only for the first forty (40) hours he worked.

88. This hourly rate of pay went up approximately 5% every year.

89. Martinez's hourly rate of pay at the end of his employment was $20.40.

90. Martinez was paid by check from Progressive Maintenance LLC.

**Defendants' Violations of the Wage Theft Prevention Act**

91. The NYLL and Wage Theft Prevention Act require employers to provide all employees with an accurate wage statement each time they are paid.

92. Throughout the relevant time period, Defendants paid Plaintiffs and the collective wages without an accompanying statement that accurately listed the number of overtime hours worked.

## COLLECTIVE ACTION ALLEGATIONS

93. The claims in this Complaint arising out of the FLSA are brought by Plaintiff on behalf of himself and other similarly situated persons who are current and former superintendent employees of Defendants since the date three years prior to the filing of this Complaint who elect to opt-in to this action (the "FLSA Collective").

94. On information and belief, the FLSA Collective consists of approximately seventy-five (75) similarly situated current and former employees of Progressive Management who have been

victims of Defendants' common policy and practices that have violated their rights under the FLSA by, *inter alia*, willfully denying them overtime wages.

As part of their regular business practice, Defendants have intentionally, willfully and repeatedly harmed Plaintiffs and the FLSA Collective by engaging in a pattern and/or policy of violating the FLSA. This policy and/or policy includes, *inter alia*, the following

    i.    failing to pay employees the applicable overtime rate for all hours worked as required by the FLSA and NYLL;

    ii.    failing to keep accurate records of hours worked by employees as required by the FLSA and NYLL, and therefore failing to provide accurate wage statements as required by the FLSA and NYLL.

95. Defendants have engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation. Defendants' unlawful conduct has been intentional, willful and in bad faith, and has caused significant damage to Plaintiffs and the FLSA Collective.

96. The FLSA Collective would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. These similarly situated employees are known to Defendants, are readily identifiable and locatable through their records. These similarly situated employees should be notified of and allowed to opt into this action, pursuant to 29 U.S.C. § 216(b).

97. The FLSA and NYLL require that employers pay all employees at least one and one-half (1.5) times the employee's wage for all hours worked in excess of forty (40) during any workweek, unless they are exempt from coverage.

98. Defendants failed to compensate Plaintiffs and members of the FLSA Collective at the appropriate overtime rate for all hours worked over forty (40). The exact accounting of such discrepancy can only be determined upon completion of discovery.

99. Defendants paid Plaintiffs and members of the FLSA Collective wages without any accompanying statement correctly listing the overtime hours worked in accordance with NYLL § 195(3).

## THE SUPERINTENDENT CLASS

100. Plaintiffs bring their FLSA and the NYLL claims, pursuant to Fed. R. Civ. P. 23, on behalf of themselves and a class of persons consisting of all non-exempt employees that worked as superintendents for Defendants from six (6) years prior to the date of the filing of this Complaint to the date of the final judgment in this matter ("Rule 23 Class").

101. Finally, Plaintiffs bring their NYLL claims, pursuant to Fed. R. Civ. P. 23 on behalf of themselves and a class of persons consisting of all non-exempt employees that did not receive accurate wage statements as required under the New York Wage Theft Prevention Act.

102. Excluded from the Rule 23 Class are Defendants, Defendants' legal representatives, officers, directors, assignors and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in any of the Defendant entities; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

103. The employees in the Rule 23 Class are so numerous that joinder of all members is impracticable.

104. Upon information and belief, the size of the Rule 23 Class, which includes current and former employees of Defendants, is approximately seventy-five (75) people. Although the precise number of such employees is unknown, the facts on which the calculation of that number depends are presently within the sole control of Defendants.

105. Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting them individually and include, but are not limited to, the following:

   (a) willfully failing to pay its employees, including Plaintiffs and the Class Members, overtime wages for hours worked in excess of 40 hours per workweek;

   (b) willfully failing to record all of the time that its employees, including Plaintiffs and the Class Members, have worked for the benefit of Defendants;

   (c) failing to provide accurate wage statements to Plaintiffs and the Class Members under the New York Wage Theft Prevention Act.

106. **Ascertainability.** The identity of all class members is readily ascertainable from Defendants' records, and class notice can be provided to all class members by means permitted by Rule 23 of the Federal Rules of Civil Procedure. To be effective, class notice should be provided not only through written communication to each class member's last known address as reflected in Defendants' records, but also through Spanish language newspaper and radio announcements, workplace postings, and other alternative means of notice designed to reach this class of transient, non-English speaking superintendents. Many class members are no longer employed by Defendants, cannot be reached at the last known address in Defendants' records, and do not have access to traditional English-speaking media.

107. **Numerosity.** The size of the class makes a class action both necessary and efficient. The size of the class consists of approximately seventy-five (75) employees. Members of the class are ascertainable but so numerous that joinders is impracticable.

108. **Common Questions Of Law and Fact.** This case poses common questions of law and fact affecting the rights of all class members, including:

   a) the policies, practices, programs, procedures, protocols, and plans of Defendants regarding payment of overtime wage compensation;

b) the policies, practices, programs, procedures, protocols, and plans of Defendants regarding tracking employees' hours worked;

c) the policies, practices, programs, procedures, protocols, and plans of Defendants regarding wage statements;

d) whether the named Defendants conspired with each other and/or with any unnamed co-conspirator, as alleged herein; and

e) what relief is necessary to remedy Defendants' unfair and unlawful conduct as herein alleged.

109. **Typicality.** The claims of the individual Plaintiffs are typical of the claims of the class as a whole. Progressive Management's unlawful policies are typical of the unlawful wage policies and practices that have and will continue to operate to deny other class members lawful compensation.

110. **Adequacy of Class Representation.** The individual Plaintiffs can adequately and fairly represent the interests of the class as defined above, because their individual interests are consistent with, and not antagonistic to, the interests of the class.

111. **Propriety of Class Action Mechanism.** Defendants have implemented a series of unlawful schemes that are generally applicable to the class, making it appropriate to issue final injunctive relief and corresponding declaratory relief with respect to the class as a whole. Class certification is also appropriate because the common questions of law and fact predominate over any questions affecting only individual members of the class. The prosecution of separate actions against Defendants by individual class members would create a risk of inconsistent or varying adjudication, which would establish incompatible standards of conduct for Defendants. For all these and other reasons, a class action is superior to other available methods for the fair and efficient adjudication of the controversy set forth in this amended complaint.

112. This action is properly maintainable as a class action under Federal Rule of Civil Procedure ("FRCP") 23(b)(3).

## FIRST CAUSE OF ACTION
### FLSA Overtime Violations, 29 U.S.C. §§ 201, *et seq*.
### (Brought on Behalf of Plaintiffs and the FLSA Collective)

113. Plaintiffs, on behalf of themselves and the FLSA Collective, re-allege and incorporate by reference all allegations in all preceding paragraphs.

114. Throughout the relevant time period, Plaintiffs and the FLSA Collective worked in excess of forty (40) hours per workweek.

115. At all relevant times throughout their employment, Defendants operated under a policy of willfully failing and refusing to pay Plaintiffs and the FLSA Collective one and one-half times the regular hourly rate of pay for work in excess of forty (40) hours per workweek, and willfully failing to keep records required by the FLSA, even though Plaintiffs and the FLSA Collective were/are entitled to receive overtime payments.

116. At all relevant times throughout Plaintiffs and the FLSA Collective's employment, Defendants willfully, regularly and repeatedly failed to pay the required overtime rate of one and one-half times their regular hourly rate for hours worked in excess of forty (40) hours per workweek.

117. Defendants' decision not to pay overtime was willful.

118. Plaintiffs and the FLSA Collective seek damages in the amount of their unpaid overtime compensation, liquidated damages as provided by the FLSA for overtime violations, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

## SECOND CAUSE OF ACTION
## Unpaid Overtime Wages Under New York Labor Law
### (Brought on Behalf of Plaintiffs and the Rule 23 Class)

119. Plaintiffs, on behalf of themselves and the Rule 23 Class, re-allege and incorporate by reference all allegations in all preceding paragraphs.

120. At all times relevant to this action, Plaintiffs and the Rule 23 Class were employed by Defendants within the meaning of NY Labor Law § 652 and 12 NYCRR § 142-2.2.

121. Defendants failed to pay Plaintiffs and the Rule 23 Class the overtime premium of one and a half times the regular hourly rate of pay, in violation of the NY Labor Law.

122. Defendants' failure to pay required overtime was willful.

123. As a result of Defendants' NY Labor Law violations, Plaintiffs and the Rule 23 Class are entitled to recover from Defendants unpaid overtime wages and liquidated damages, as well as reasonable attorneys' fees and the costs of the action, including interest, pursuant to the NY Labor Law.

## THIRD CAUSE OF ACTION
## New York Labor Law – Failure to Provide Accurate Wage Statements
### (Brought on Behalf of Plaintiffs and the Rule 23 Class)

124. Plaintiffs, on behalf of themselves and the Rule 23 class, re-allege and incorporate by reference all allegations in all preceding paragraphs.

125. Defendants have willfully failed to supply Plaintiffs and the class with statements of wages as required by NYLL, Article 6, § 195(3) that accurately state overtime hours worked.

126. Through their knowing or intentional failure to provide Plaintiffs and the class with accurate wage statements as required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Relations regulations.

127. Due to Defendants' willful violations of NYLL, Article 6, § 195(3), Plaintiffs and the class are entitled to statutory penalties of two hundred fifty dollars for each work day that Defendants failed to provide Plaintiffs and the class with accurate wage statements, or a total of five thousand dollars each, reasonable attorneys' fees, costs and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-d).

**FOURTH CAUSE OF ACTION**
**New York Labor Law – Failure to Provide Wage Notices**
**(Brought on behalf of Plaintiffs and the Rule 23 Class)**

128. Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

129. Defendants willfully failed to supply Plaintiffs and the Rule 23 Class with wage notices, as required by NYLL, Article 6, § 195(1), in English or in the language identified by Plaintiffs as their primary language, containing Plaintiffs' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

130. Through their knowing or intentional failure to provide Plaintiffs and the Rule 23 Class with the wage notices required by NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Relations regulations.

131. Due to Defendants' willful violations of NYLL, Article 6, § 195(1), Plaintiffs and the Rule 23 Class are entitled to statutory penalties of fifty dollars for each work day that Defendants failed to provide Plaintiffs and the Rule 23 Class with wage notices, or a total of five thousand dollars each, reasonable attorney's fees, costs and injunctive and declaratory relief, as provided for by the NYLL, Article 6, § 198(1-b).

**FIFTH CAUSE OF ACTION**
**New York Labor Law – Failure to Provide Wage Statements**
**(Brought on behalf of Plaintiffs and the Rule 23 Class)**

132. Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

133. Defendants willfully failed to supply Plaintiffs and the Rule 23 Class with accurate wage statements, as required by NYLL, Article 6, § 195(3), containing their regular rate or rates of pay; overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked.

134. Through their knowing or intentional failure to provide Plaintiffs and the Rule 23 Class with the wage statements required by NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Relations regulations.

135. Due to Defendants' willful violations of NYLL, Article 6, § 195(3), Plaintiffs and the Rule 23 Class are entitled to statutory penalties of two hundred fifty dollars for each work day that Defendants failed to provide Plaintiffs and the Rule 23 Class with wage statements, or a total of five thousand dollars each, reasonable attorney's fees, costs and injunctive and declaratory relief, as provided for by the NYLL, Article 6, § 198(1-d).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the entry of an order and judgment against Defendants Progressive Maintenance LLC and Progressive Management of N.Y. Corp., and Allan Arker and Ken Middleton, jointly and severally, as follows:

(a) Designation of the action as a collective action on behalf of the Rule 23 Class Members (asserting FLSA claims and state claims) and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of the action, and permitting them to assert timely FLSA claims and state claims in the action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

(b) Certification of this case as a class action pursuant to Rule 23;

(c) Designation of Plaintiffs as representatives of the Rule 23 Class and counsel of record as Rule 23 Class Counsel;

(d) Damages for unpaid overtime due to Plaintiffs and the Rule 23 Class Members in an amount to be determined at the trial of the action, along with liquidated damages as provided by the FLSA and NYLL, interest, attorneys' fees, and the cost of the action;

(e) Statutory penalties of two hundred fifty dollars for each work day that Defendants failed to provide Plaintiff and the Rule 23 Class Members with accurate wage statements, or a total of five thousand dollars, as provided by for by NYLL, Article 6 § 198;

(f) Pre-judgment and post-judgment interest;

(g) Reasonable attorneys' fees and costs of the action;

(h) For such other further and different relief as this Court deems just and proper.

Dated: April 21, 2019
      New York, New York

                            **THE LAW OFFICES OF JACOB ARONAUER**

                            By:    */s/ Jacob Aronauer*
                                     Jacob Aronauer
                                     225 Broadway, 3rd Floor
                                     New York, NY 10007

                                     *Attorney for Plaintiffs*